UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARC PENN, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 17-3140 |
| v. | : | OPINION |
| EXXONMOBIL RESEARCH AND ENGINEERING COMPANY, | : | |
| Defendant. | : | |

This matter is before the Court on a motion for summary judgment filed by
Defendant ExxonMobil Research and Engineering Company ("EMRE"). Having
considered the parties' submissions, the Court decides this matter without oral
argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated
below, this Court grants Defendant's motion for summary judgment.

## I.    Background

Plaintiff Marc Penn, who is African-American, has been employed by Defendant
since April 2006 at its Paulsboro, New Jersey facility. He was primarily supervised by
Mike Carrocino, a Facility Manager, and Ben McLaughlin, Building Services Supervisor;
they are Caucasian. He alleged the following facts in his Complaint. [Dkt. No. 1]

In or about August of 2012, Plaintiff expressed concerns of discrimination
internally and externally (including through the Equal Employment Opportunity
Commission "EEOC"). In or about December of 2012, he was returned to the "GREF
group" expecting a full and final resolution to any prior concerns. He did not initiate a
lawsuit based upon his 2012 EEOC Charge.

Following his return to the GREF Group, however, Plaintiff alleges that he was subjected to a hostile work environment, multiple discriminatory and retaliatory actions, and antagonism because of his race and complaints of discriminatory treatment. Through 2014, Plaintiff states that he was: at times denied access into the workplace (through lack of card access); arbitrarily removed from multiple committees, including the Safety Committee and United Way Committee; not scheduled as requested or given the same scheduling accommodations as similarly situated coworkers, at times being denied the ability to leave work for a scheduled appointment; not given previously assured training despite multiple requests; spoken to in a condescending and inappropriate manner when he was addressed in the workplace; and Plaintiff further alleges that his e-mail and correspondence regarding workplace matters were ignored.

Plaintiff also alleges that: without adequate factual or legal basis, Defendant mandated Plaintiff undergo a fitness for duty evaluation as a condition of continued employment wherein he was removed from work on or about May 17, 2014; he underwent an evaluation with a psychologist selected by Defendant after being out of work for a period of time; and, notwithstanding the psychologist finding no rational basis for Plaintiff's referral or continued need to remain out of work, Plaintiff was out of work until about mid-August 2014 (a period of approximately three months).

In the second half of June 2018, Plaintiff allegedly was threatened in writing by Defendant's management with being considered to have resigned for expressing that he did not want Defendant to seek more detailed medical information after Defendant's psychologist had already issued a detailed report outlining that Plaintiff posed no threat and should not be kept out of work. Upon returning to work from his "forced" leave after having raised numerous concerns of his ongoing mistreatment, Plaintiff was issued a

five-day suspension in August of 2014 (to which he expressed concerns about being held responsible for a policy violation that took place while on leave and which was not enforced against others). Plaintiff was at times requested or required to give daily and weekly updates about certain aspects of his job that were not sought from others. Finally, Plaintiff alleges he was not given fair, equal, or actual overtime hours to work, in contrast with others. The types of treatment Plaintiff experienced allegedly continued through 2015 and until his supervision changed.

Plaintiff filed the Complaint in this action on May 4, 2017, asserting claims for racial discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981, the New Jersey Law Against Discrimination ("NJLAD"), and Title VII of the Civil Rights Act of 1964. [Dkt. No. 1]. Defendant filed an Answer to the Complaint on July 18, 2017. [Dkt. No. 7]. Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims on June 29, 2018. [Dkt. No. 30]. The Motion has been fully briefed by the parties.

## II.    Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible

evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); *accord* Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Discussion

The NJLAD "was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 534 (D.N.J. 2008); *see Fuchilla v. Layman*, 537 A.2d 652, 660 (N.J. 1988) ("[T]he overarching goal of the [NJLAD] is nothing less than the eradication 'of the cancer of discrimination.'" (quoting *Jackson v. Concord Co.*, 253 A.2d 793, 799 (N.J. 1969)))

The New Jersey Supreme Court has explained that the NJLAD is broad remedial legislation, designed to prohibit employers from discriminating against employees with respect to the terms and conditions of their employment on the basis of a protected characteristic, such as race, religion, age, sex, and disability. *See Quinlan v. Curtiss-Wright Corp.*, 8 A.3d 209, 220 (N.J. 2010) ("We have been vigilant in interpreting the [NJLAD] in accordance with that overarching purpose, and in recognition that it is . . . remedial legislation that was intended to be given a broad and liberal interpretation."); *see also* N.J. Stat. Ann. § 10:5-12(a) (listing the various protected classes under the NJLAD).

Workplace discrimination claims brought under the NJLAD are analyzed under the flexible burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Viscik v. Fowler Equipment Co.*, 800 A.2d 826 (N.J. 2002) (adopting *McDonnell Douglas* framework for NJLAD employment discrimination cases); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 493 (3d Cir.1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim."). Additionally, "the substantive elements of a claim under section 1981 generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). Accordingly, the Court will analyze Plaintiff's several race discrimination claims simultaneously.

### A.  Plaintiff's Racial Discrimination Claims

Defendant moves for Summary Judgment on Plaintiff's racial discrimination claims under Section 1981, Title VII, and NJLAD arguing that Plaintiff cannot establish a *prima facie* case for his disparate treatment claims because (1) he did not suffer an actionable adverse employment action, and (2) even if Plaintiff had, he cannot prove the ultimate inference of discrimination. Defendant's motion for summary judgment further provides that even if a *prima face* case for discrimination against it exists, Plaintiff's claim fails because he cannot establish that Defendant's legitimate non-discriminatory reasons for its actions are pretext.

Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination by pointing to evidence in the record sufficient to create a genuine factual dispute that "s/he suffered an adverse employment action . . . under circumstances that could give rise to an inference of intentional discrimination" on the basis of race. *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir.

2008); *accord Iadimarco v. Runyon,* 190 F.3d 151, 163 (3d Cir. 1999) (requiring plaintiff who alleges reverse race discrimination to present "sufficient evidence to allow a reasonable fact finder to conclude . . . that the defendant treated [plaintiff] less favorably than others because of his race").

The oft-cited elements of a *prima facie* case of racial discrimination are that a plaintiff: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999).

If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for its employment decision. *McDonnell Douglas*, 411 U.S. at 802-03. If the employer meets its burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason for the adverse employment action was pretextual. *Id.* To establish pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994). To meet that burden, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken." *Id.* at 765.

In the present case, there is no dispute that (1) Plaintiff is a member of a protected class, as he is an African American; and (2) that Plaintiff was qualified for his

position. The first issue to be decided is whether Plaintiff has suffered an adverse employment action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiff argues that his alleged adverse employment actions consist of the following: Defendant forced Plaintiff to undergo a fitness for duty exam and kept him out of work for three months within weeks of his complaint of race discrimination and retaliation; the day Plaintiff returned to work, Defendant suspended him for five days, unpaid, for a violation of safety policy that occurred prior to his "forced leave," and a white colleague who violated the same safety policy was not suspended. However, Plaintiff's opposition brief focuses solely on the argument that he suffered an adverse employment action when Defendant suspended him without pay. *See* [Dkt. No. 34, Pl. Op. Brf. at 24].

To be sure, Plaintiff's suspension is the only employment action he alleges that is sufficiently severe enough to give rise to an adverse employment action, "one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).[1] Here,

---

[1] Plaintiff's fitness for duty evaluation was fully paid. Defendant required the evaluation prior to any disciplinary action for Plaintiff's admitted violation of a safety rule. "Merely requiring an employee to submit to a medical or psychiatric examination is not an adverse employment action." Diaz v. Lezanski, No. CIV.A. 9-223 WJM, 2011 WL 2115671, at *6 (D.N.J. May 25, 2011) (citing *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir.2005)); Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (noting that it agreed with other courts of appeals that "unanimously concluded that placing an employee on paid administrative leave where there is no presumption of termination is not an adverse employment action" (citations omitted) (internal quotations omitted)); *see also* Matthews v. Potter, No. 09 C 3212, 2010 WL 5060246,

Plaintiff's five-day suspension (ultimately a three-day suspension) was unpaid. While a *paid* suspension, without more, may not constitute an adverse employment action, the Third Circuit has held that an *unpaid* suspension does rise to an adverse employment action. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326-327 (3d Cir. 2015) (analyzing whether employee's unpaid suspension was a product of discrimination, but holding a "suspension with pay, 'without more,' is not an adverse employment action under the substantive provision of Title VII." (citations omitted)).

Defendant stresses that Plaintiff's suspension, though unpaid, is not an adverse employment action because Plaintiff admits to the wrongdoing that Defendant gives as its reason for the suspension. To this extent, Defendant relies on *Burton v. PA State Police*, 612 F. App'x 124, 128 (3d Cir. 2015) for the proposition that "an unpaid suspension was not an adverse employment action in part because the employee admitted he was suspended for violating policy." *See* Def. Supporting Brf. at 2. The Court finds that Defendant's reliance is misplaced. Burton did not specifically address whether the employee's two-day unpaid suspension was an adverse employment action, rather it proceeded to hold the suspension was not racially motivated. See *Id.* Moreover, an unpaid suspension undeniably alters an employee's compensation. Here, the record also indicates that while "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances," Plaintiff disputes whether this was an appropriate circumstance for disciplinary action. *See Jones*, 796 F.3d at 326 (quoting *Joseph v.*

at *5 (N.D. Ill. Dec. 6, 2010) ("Requiring an employee to undergo a psychiatric evaluation as part of a fitness-for-duty assessment is also not an adverse employment action." (citing *Caver*, 420 F.3d at 256).

*Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)). Therefore, the Court finds because Plaintiff's suspension was unpaid and because Plaintiff disputes the appropriateness of disciplinary action taken, the Court cannot rule that Plaintiff has not experienced an adverse employment action.

Even if Plaintiff has experienced an adverse employment action, Defendant argues that summary judgment is still proper because Plaintiff cannot establish an inference of discrimination, the final element of Plaintiff's *prima facie case*. The Court agrees.

The inference of discrimination may be presented in the form of evidence of disparate treatment, "whereby a plaintiff shows that [he or she] was treated less favorably than similarly situated employees" of a different race. *Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 366 (3d Cir. 2008). Such inference of discrimination may be supported in several ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by supervisors suggesting racial animus. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002); *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010); *Vega v. City of Brunswick*, 171 F. App'x 930, 935-36 (3d Cir. 2006) ("[W]here a plaintiff claims . . . racial discrimination in employment, the plaintiff may present evidence of the treatment of employees of other races as a basis for the trier of fact to infer that the differing treatment meted out to the plaintiff was based on race.").

Thus, a claim of racially disparate treatment requires the plaintiff employee to prove a discriminatory motive, directly or indirectly. *Jason v. Showboat Hotel & Casino*, 747 A.2d 802, 807 (N.J. Super Ct. App. Div. 2000). That is, "a *prima facie* case must

support the inference that Plaintiff was discriminated against *because* of his race, color, or national origin--it is not *prima facie* discrimination to simply be a member of a protected class who is subjected to a negative employment decision." *Rene v. Lidestri Foods, Inc.*, No. 09-3908 (RMB), 2010 WL 4807050, at *6 (D.N.J. Nov. 17, 2010). Therefore, the Plaintiff must demonstrate that a causal connection between the alleged disparate treatment and his race exists. Here, the record lacks any such casual connection.

First, Plaintiff's general averments that his Caucasian colleagues were treated more favorably in the work place fail to establish any genuine dispute of material fact that would give rise to an inference of discrimination. Plaintiff argues that his supervisors "treat his Caucasian coworkers more favorably, they would joke and jovial with them, but with Mr. Penn, they were short and curt." Pl. Opp. Brf. at 27. Despite Plaintiff's conclusory statement, Defendant has offered evidence that the Plaintiff was not treated differently than other employees outside of his protected class. The Plaintiff concedes that he has been disciplined four to five times during his employment with Defendant. When asked what other employees he knew of who were disciplined more than four or five times, Plaintiff responded, "they been retired or fired." Pl. Dep. 106:3-11. Plaintiff could also recall a specific Caucasian employee, under the same supervision as Plaintiff (Mr. Carrocino), who was forced to resign by the company. *Id.* at 107. Aside from this one employee, Plaintiff did not know anyone else that was disciplined four or five times, nor was he aware of anyone who was disciplined three or four times. *Id* at 107:8-10; 108:1-3.

Next, Plaintiff specifically names five Caucasian employees who engaged in similar misconduct but were allegedly treated more favorably by the Defendant. "[T]o be

considered similarly situated, comparator employees must be similarly situated in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 Fed. Appx. 879, 881–82 (3d Cir.2011). In determining whether someone can be considered similarly situated, "courts tend to consider whether the plaintiff and the comparator had similar job responsibilities, were subject to the same standards, worked for the same supervisors, and engaged in comparable misconduct." *Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015). Specifically, "[w]hether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998).

Accordingly, only the employees who engaged in *comparable* misconduct that warranted Plaintiff's suspension should be considered in the Court's analysis. To that effect, only two employees offered as comparators out of five may potentially serve as similarly situated nonmembers of Plaintiff's protected class:[2] Dan Little and Scott Defrank. Both Mr. Little and Mr. Defrank are Caucasian employees who worked as electricians in the same group as Plaintiff, under the same supervision, who engaged in comparable misconduct. Def SUMF ¶¶ 81, 83; Pl. Res. to Def. SUMF.

Plaintiff's argument that Mr. Defrank is a similarly situated employee who was treated more leniently does not present a sufficient basis for an inference of

---

[2] The other three comparators offered by the Plaintiff are Jay Berry, Greg Grey, and Lou DeCicco. All three employees are not a similarly-situated. Each employee did not engage in conduct comparable to Plaintiff. Instead, these three employees engaged in altercations with coworkers and were not cited for safety violations. Furthermore, Mr. Grey and Mr. DeCicco's were not instrument technicians, and Mr. Grey and Mr. Berry did not report to Mr. McLaughlin. Notably, Mr. Berry was even suspended for four weeks without pay for his inappropriate actions. *See* Declaration of Joshua Bryat [Dkt. No. 37-3]; [Dkt. Item 38 (Ex. G)].

discrimination. Mr. Defrank did not violate one of the Life Saving safety rules Plaintiff

was suspended for violating. Mr. Defrank violated one of Defendant's ladder rules for

standing too high on a ladder. As a result, Mr. Defrank received verbal coaching. In the

context of this case, to be similarly situated means "showing that the two employees . . .

engaged in similar conduct without such differentiating or mitigating circumstances as

would distinguish their conduct or the employer's treatment of them." *Opsatnik v.*

*Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Radue v. Kimberly–*

*Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000)).

Plaintiff's argument concerning Mr. Little similarly fails to establish an inference

of discrimination. It is undisputed that Mr. Little was involved in the very incident that

resulted in Defendant's suspension. Mr. Little, like the Plaintiff, failed to obtain a work

permit. He was not suspended, rather he only received a written warning. Nonetheless,

Defendant provides a valid uncontested reason for the difference in consequences given

to the two employees. Given that Plaintiff was "lead worker" and Mr. Little was ground

watch and safety watch, Defendant argues that it was Plaintiff's responsibility to obtain

the work permit. Mr. Little was not actually performing the job that warranted a permit;

according to Defendant he was not the employee responsible for obtaining the permit.

Therefore, Mr. Little was given a written warning for "allowing the job to continue in an

unsafe manner and not stopping the job." Def. SUMF ¶ 65. Plaintiff does not dispute

this. Pl. Resp. to Def. SUMF ¶ 65. Ultimately, Defendant decided to suspend Plaintiff

due to the seriousness of the safety violation, which his supervisor believed was an

intentional violation. *Id.* at ¶ 64; Def. SUMF ¶ 64.

At the time of the violation, Plaintiff did not claim that Mr. Little was the lead

worker; in fact, Plaintiff later testified that Mr. Little was his "sidekick" on that

particular job.[3] Pl. Dep. 211:11-12. Therefore, plaintiff provides no evidence that their acts were of such "comparable seriousness" as to justify questioning the difference in treatment of the two employees and further create an inference that Defendant was suspended *because of* his race. *See Anderson v. Haverford Coll.*, 868 F. Supp. 741, 745 (E.D. Pa. 1994); *Burton*, 612 F. App'x at 128 (holding that employee's 2-day unpaid suspension was not racially motivated under circumstances where plaintiff acknowledged his suspension was a result of several infractions and "did not put forth evidence of similarly situated employees receiving less severe punishments").

Furthermore, Mr. Guth is the one who reported Plaintiff's failure to obtain a work permit to his supervisors. Plaintiff does not contend that Mr. Guth has discriminatory animus against him. EMRE Human Resources also joined the investigation into Plaintiff's conduct. The HR representative who supported the ultimate decision to suspend Plaintiff, is an African-American employee, Mr. Alfred. While alone this fact would not defeat an inference of discrimination, it may "weaken any possible inference." *Dungee v. NE Foods, Inc.*, 940 F. Supp. 682, 688, n.3 (D.N.J. 1996) ("The fact that the final decision maker and both interviewers are members of the plaintiff's protected class (women) weakens any possible inference of discrimination. This reasoning has been applied to weaken the inference of discrimination in sex, race, and age cases." (citations omitted)). Without more, Plaintiff has not offered sufficient evidence as a basis for a jury "to infer that the differing treatment meted out to the plaintiff was based on race." *Vega*,

---

[3] Plaintiff contends that it is the Authorizer's responsibility to *issue* work permits but it is clear from the record that regardless of the process, Plaintiff knew that the work he was doing was not to be conducted without a permit and he himself was the employee performing the work (including the risks that qualified the job for a work permit under EMRE safety rules).

171 F. App'x at 935-36. Therefore, the Court grants summary judgment as to all of Plaintiff's racial discrimination claims.

### B. Plaintiff's Retaliation Claims

To maintain a claim for retaliation under § 1981 and Title VII, Plaintiff must establish a prima facie case by tendering evidence that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police,* 604 F.3d 788, 798, 798 n.14 (3d Cir. 2010).[4]

Plaintiff alleges that his protected activity consisted of: filing an EEOC charge of race discrimination against Defendant in 2012; complaining to his supervisor, manager, and human resources about race discrimination in January of 2014; complaining in writing and verbally to his supervisor, manager, and human resources about race discrimination and retaliation in February of 2014; verbally complaining about race discrimination and retaliation in April of 2014, and complaining about Defendant's treatment of him upon return from his allegedly forced fitness for duty evaluation. There is no dispute that Plaintiff establishes that he has engaged in protected activity.

Defendant moves for summary judgment on Plaintiff's retaliation claims arguing that Plaintiff cannot show that (1) Defendant took an adverse employment action against him, or (2) a causal connection between his protected activity and any alleged

---

[4] Similarly, to establish a *prima facie* case of retaliation under the NJLAD, a plaintiff must show: (1) he belonged to a protected class; (2) he engaged in protected activity, which was known to the employer; (3) he was subjected to an adverse employment consequence; and (4) a causal link exists between the protected activity and the adverse employment consequence. *Victor v. State,* 4 A.3d 126, 141 (N.J. 2010).

adverse employment action exists. Based on the record, the Court finds Plaintiff has provided sufficient evidence of an adverse employment action; however, for the reasons that follow the Court finds that Plaintiff has not adequately established causation.

For purposes of retaliation claims, a plaintiff must establish that s/he was subjected to a materially adverse employment action. A materially adverse employment action is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sana Fe Ry. V. White*, 548 U.S.53, 68 (2006). The Court must "examine the challenged conduct 'from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71). As stated by the Supreme Court of the United States "[t]he anti[-]retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67.

Plaintiff first alleges his fitness for duty evaluation was an adverse employment action. Plaintiff received his full salary while on leave due to the evaluation and does not successfully allege that this evaluation altered the terms and conditions of his employment in anyway. Def. SUMF ¶ 71. It is also undisputed that Plaintiff returned to the same position after his leave. *Id.* Therefore, Plaintiff's fitness for duty evaluation did not result in any harm to Plaintiff's employment and was not serious or tangible enough to reasonably be considered adverse in the retaliatory context. *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005) ("ordering [employee] to see a psychiatrist, without more, did not adversely affect his status as an employee."); *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir., 1998) (referral of police officer for psychological testing to determine fitness for duty "was not an adverse employment action. Rather,

the referral was designed to gather facts to form the basis for an employment decision."). Here, the evaluation was designed to ensure Plaintiff was fit to work and provide information to Defendant before initiating his suspension. Def. SUMF ¶ 67. Plaintiff's suspension, however, resulted in loss of compensation as it was unpaid. Therefore, Plaintiff's suspension will again amount to an adverse employment action, as it might dissuade a reasonable person from making or supporting a charge of discrimination. *Jones*, 796 F.3d at 326 (considering an unpaid suspension to be materially adverse).

Next, Plaintiff alleges that he can establish the second element of retaliation, causation, through (1) the temporal proximity between his protected activity and adverse action; and (2) "via pretext" Pl. Op. Brf. at 17-18. To assess causation, the court may consider any "unusually suggestive" temporal proximity between the protected activity and alleged adverse employment action. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007). In addition to looking at temporal proximity, the Court must consider "with a careful eye . . . the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000).

Plaintiff's first complaint was in August of 2012, when Plaintiff expressed concerns of discrimination internally and reported to the EEOC. Plaintiff brings suit based on events occurring close to two years later in 2014. Thus, Plaintiff cannot establish a causal connection based solely on his initial participation in protected activity. *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 760 (3d Cir. 2004) (temporal proximity of even two months is not unusually suggestive). Plaintiff

does not argue otherwise; alternatively, Plaintiff's argument rests on his internal complaint of discrimination and retaliation with Defendant on April 23, 2014.

Weeks after this complaint, on or about May 17, 2014 Defendant required Plaintiff to undergo a fitness for duty evaluation. Plaintiff returned to work about three months later, after which he was given the suspension. Plaintiff's suspension is the adverse action at issue; his suspension commenced months after his complaint. Regardless, the Third Circuit has held "that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive" *see Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)). Moreover, "[t]he mere fact that [an adverse action] occurs subsequent to the lodging of a complaint is ordinarily insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Chambers v. Heidelberg USA, Inc.*, No. 04–583, 2006 WL 1281308, at *11 (D.N.J. May 5, 2006); *see also El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 177, 887 A.2d 1170, 1189 (App. Div. 2005) ("we decline the invitation, implicit in plaintiff's arguments, to find that filing a complaint about a supervisor completely insulates an employee from adverse employment actions thereafter. We decline to adopt her argument that mere temporal coincidence supports a cause of action where an objective view of the facts simply does not.").

Plaintiff alleges that he can further establish an inference of retaliatory motive by showing the alleged reason for his adverse employment action was pretextual. But the record reflects that Plaintiff does not dispute the core misconduct (failing to obtain a work permit) from which his adverse employment action arose. More specifically, Plaintiff does not dispute Defendant's ultimate reason for his suspension, a violation of

EMRE's safety policy. Def. SUMF ¶ 64. Furthermore, Defendant provides an extensive record and testimony regarding Plaintiff's performance and behavioral issues as an employee. Indeed, other employees outside of those alleged by Plaintiff to have been treating him differently, have questioned his conduct. *See* [Dkt. No. 31-20; 30; 19]. Importantly, the record in this case also affords ample evidence that Plaintiff's overall relationship with his supervisors after his April complaint was not "qualitatively different" than prior to that complaint, nor prior to his initial 2012 complaint.[5] "If Plaintiff cannot show that the relationship in question became 'qualitatively different' after the protected activity, he cannot meet his burden" of retaliatory animus. *Sampath v. Concurrent Techs. Corp.*, No. CIVA 3:03-CV-264, 2008 WL 868215, at *35 (W.D. Pa. Mar. 31, 2008), aff'd, 299 F. App'x 143 (3d Cir. 2008) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)).

According to the record, tension between Plaintiff and his supervisors existed some time before his April complaint. Indeed, Plaintiff complained internally on or around January 14, 2014, January 27, 2014, February 3, 2014, and February 17, 2014. Pursuant to these complaints, Plaintiff often disagreed with his supervisors' disciplinary actions against him, which alone does not infer his supervisors' actions were a result of his protected activity. *See* LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 234 (3d Cir. 2007) ("[A]lthough the evidence in the record clearly shows a tense relationship between [the plaintiff] and [supervisor], it does not sustain the inference

---

[5] *See, e.g.*, Def. SUMF ¶¶ 40-48 and Pl. Resp. to Def. SUMF ¶¶ 40-48 (discussing the circumstances of Plaintiff's interactions with his supervisor's in January 2014, dealing with issues as to whether Plaintiff was getting his work done on time.); Def. SUMF ¶¶ 26-28 and Pl. Resp. to Def. SUMF ¶¶ 26-28 (discussing issues between Plaintiff and his supervisors in November 2013 after an incident with his building access card).

that it was caused by [supervisor's] protected activity."). Additionally, Plaintiff does not offer evidence to oppose his alleged conduct that led to disciplinary actions. While Plaintiff may disagree with the complaints of his supervisors, and the resulting business decisions "without additional factual support from the record, Plaintiff cannot rebut Defendant's non-discriminatory reasons for termination." *See Jenkins v. Inspira Health Network, Inc.*, No. CV 15-2922 (JBS/AMD), 2018 WL 1535208, at *14 (D.N.J. Mar. 29, 2018).

In support of his pretextual argument, Plaintiff again relies on comparator evidence to demonstrate Defendant's "disparate and antagonistic treatment" of him compared to non-African American employees working for Defendant. Pl. Op. Brf. at 18. For these reasons states *supra* in the Court's discussion of Defendant's racial discrimination claim, the EMRE employees offered by Plaintiff as comparators do not create an inference of retaliatory motive. The first issue, as the Court has already addressed in-part is that Plaintiff cannot show such employees are similarly situated. To be sure, Plaintiff was the first one to violate Defendant's new safety rules and therefore, there is not one particular employee whose misconduct could be compared to Plaintiff. Because of this, however, the Union Grieved Plaintiff's five-day suspension and therefore, the length of Plaintiff's suspension was decreased to three-days.

In addressing a causal connection, the Court may also consider "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.' " *Fasold v. Justi*ce, 409 F.3d 178, 190 (3d Cir. 2005). Here, the record as a whole lacks any sufficient evidence. Even in a light most favorable to Plaintiff, there is no genuine issue of material fact that but for Plaintiff's protected activity Defendant would not have suspended him.

## C. Hostile Work Environment

Lastly, Defendant's Motion for Summary Judgment argues that Plaintiff cannot establish a *prima facie* case for hostile work environment. First, Defendant asserts that Plaintiff's harassment claim fails because there is no evidence that any of the alleged harassment was based on his race. The Court agrees.

"When a black plaintiff alleges hostile work environment racial harassment under the LAD, []he must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [race]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [African American] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citing *Taylor v. Metzger,* 706 A.2d 685, 688-89 (N.J. 1998) (quoting *Lehmann v. Toys 'R' Us, Inc.,* 626 A.2d 445, 453 (N.J.1993)) (modifications in original)). "'[O]ffhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver*, 420 F.3d at 262 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)). "Rather, the 'conduct must be extreme to amount to a change in the terms and conditions of employment . . . .'" *Id.* In determining whether the conduct at issue is sufficiently extreme, the Court must consider the "totality of the circumstances." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990).

Claims under 42 U.S.C. § 1981 also are governed by the burden-shifting principles set forth by the Supreme Court:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the

> plaintiff must then have an opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the defendant were not its
> true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981) (citations omitted)

(quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Plaintiff's complaint alleges that he was subject to a hostile work environment through 2014. Plaintiff states that he has been denied access into the workplace; removed from multiple committees; not scheduled as requested or given the same scheduling accommodations as similarly situated coworkers; not given previously assured training despite multiple requests; spoken to in a condescending and inappropriate manner when he was addressed in the workplace; and Plaintiff further alleges that his e-mail and correspondence regarding workplace matters were ignored. In addition, Plaintiff reiterates that he was placed on a fitness for duty evaluation and suspended upon his return form that evaluation.

The record, however, lacks any sufficient evidence that of the actions taken above were because of Plaintiff's race. Principally, the Court has already addressed in detail Plaintiff's suspension. To restate, it is undisputed that Plaintiff violated EMRE's safety rules, and as a serious violation Defendant decided to suspend Plaintiff. Similarly, most of Plaintiff's additional allegations of harassment are linked to disciplinary actions for Plaintiff's misconduct. Specifically, the record provides the following:

First, Plaintiff's access card was temporarily deactivated while Plaintiff was on paid leave for his fitness for duty evaluation. This evaluation was a precaution stemming from Defendant's concerns about Plaintiff's mental state and the card was was reactivated once he was cleared to return to work. Def. SUMF ¶ 77. Second, Defendant offers that any issues with Plaintiff's scheduling accommodations resulted from

Plaintiff's late notice of request for such accommodations, contrary to work policy and previous warnings. *Id.* at ¶¶ 97-99; Def. Ex. 59, 60. Certain training requested by Plaintiff was not fulfilled because it was no longer required for Plaintiff's role in GREF. Plaintiff was informed that changes had been made and even asked to repot his previous training to Defendant to ensure he would receive any proper further training. Def. Ex. 9. Rather than ignoring Plaintiff's correspondence pertaining to workplace matters, EMRE initiated an investigation into Defendant's complaints on three different occasions. Def. SUMF ¶¶ 48-57; 94-105. Plaintiff himself was interviewed more than once in an effort to resolve these workplace matters. In addition, Plaintiff's supervisor states that not all emails warrant a response, but Defendant nevertheless supplies multiple email-chains and meetings between Plaintiff, his supervisors, HR, and Union representatives. *See e.g.*, Def. Exs. 8-9, 31-35. Finally, Plaintiff does not offer evidence to support his conclusory allegation that he was spoken to in a "condescending" and "inappropriate" manner, a specific allegation addressed in Defendant's ongoing investigation into Plaintiff's internal complaints regarding discrimination and retaliation. Def. SUMF ¶¶ 97, 99; Def. Ex. 3.

"Of course it is possible that an employer could express its discriminatory animus by virtually any means. But unless those means themselves have a discriminatory tinge, further facts are needed to establish the but-for causation element." *DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 594 (D.N.J. 2015) (addressing the employee plaintiff's "six enumerated acts of harassment" which were "examples of workplace unfairness that d[id] not have any inherent connection to age, race, or disability").

To rebut Defendant's Defendant evidence that its decisions regarding Plaintiff were taken in light of his behavior and poor performance, and support his hostile work environment claim, Plaintiff once more alleges that he was treated less favorably than other non-African American employees. Thus, Plaintiff puts forth the same evidence this Court finds fails to create an inference of discrimination. For the reasons stated above, Plaintiff fails to establish that he was treated disparately compared to Caucasian employees who did not make charges of discrimination. The Additional individuals Plaintiff provides to illustrate the difference in treatment also fail to give rise to a genuine dispute of fact as to whether Plaintiff's alleged harassment was because of his race.

First, Plaintiff maintains that Caucasian employee Jay berry, "who grabbed another employee by the neck and pushed him into a cabinet," was not sent for a fitness of duty evaluation. Mr. Berry was, however, suspended for four weeks without pay. *See* Def. Reply Ex. H. Additionally, instead of fitness of duty evaluation, which is to ensure employees are "fit" for their job, Defendant's also "required [Mr. Berry] to attend anger management counseling" as a result of that event. *Id.*; Def. Rep. SUMF ¶ 83. Finally, Plaintiff alleges that Greg Gray "made threatening statements" at the work place," and Lou DeCicco "engaged in verbal altercation," but neither of these Caucasian employees had to endure a fitness for duty evaluation. Pl. Br. at 33. Defendant has provided documentation, however, that Mr. Grey was counseled and required to complete harassment E-Leaning training. Mr. Grey was transferred from his group and received additional one on one counseling. While Mr. DeCicco was not disciplined, Defendant argues that his conduct was not similar to the Plaintiff's. In fact, all three colleagues engaged in different conduct than the Plaintiff. In the one scenario where a Caucasian

employee and Plaintiff did engage in the same poor performance, Defendant did discipline them both in the same way.

Even viewing all of the facts in a light most favorable to Plaintiff no reasonable jury could find that his supervisors conduct, and disciplinary actions would not have occurred but-for his race. *See Peace-Wickham v. Walls*, 409 F. App'x 512, 520 (3d Cir. 2010) (finding Plaintiff failed to show a hostile work environment as a matter of law in-part because employee "present[ed] no evidence to establish a discriminatory motive behind her supervisor's experience-and performance-based reasons"). Therefore, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims for Hostile Work Environment.

IV.    <u>Conclusion</u>

For the forgoing reasons, Defendant's Motion for Summary Judgment is granted in full. Accordingly, all counts of Plaintiff's complaint will be dismissed.


An appropriate Order shall issue.

Dated: September 30, 2019


  s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE
